UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSEPH RILEY,**

    **Plaintiff,**

  v.                        Civil Action 2:20-cv-4652
                           Chief Judge Algenon L. Marbley
**COMMISSIONER OF SOCIAL**      Magistrate Judge Chelsey M. Vascura
**SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Joseph Riley ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits and Child's Insurance Benefits.  This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 11).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                I.      BACKGROUND

Plaintiff filed his applications for Title II Disability Income Benefits and Child's Insurance Benefits on October 24, 2017, alleging, after amendment, that he became disabled effective November 16, 1994.  (R. 15, 275–76, 297–98.)  On July 29, 2019, following administrative denials of Plaintiff's applications initially and on reconsideration, a video hearing was held before Administrative Law Judge Gregory Smith (the "ALJ").  (*Id.* 31–69.)  Plaintiff, represented by counsel, appeared and testified.  Vocational expert Ledia Woodham (the "VE")

also appeared and testified at the hearing.  On August 16, 2019, the ALJ issued a decision denying benefits.  (*Id.* at 15–24.)  On July 6, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. 1–3.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

In his Statement of Errors (ECF No. 12), Plaintiff asserts two contentions of error: (1) the ALJ committed reversible error by failing to find that Plaintiff's mental health limitations met the criteria of Listings 12.04, 12.08, and 12.11; and (2) the ALJ committed reversible error by failing to account for Plaintiff's frequent physical altercations, which per the testimony of the VE would render Plaintiff incapable of maintaining employment.  (*Id.* at 11–14.)

## II.     THE ALJ'S DECISION

On August 16, 2019, the ALJ issued a decision finding again that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 15–24.)  Because Plaintiff applied as an adult for Child Insurance Benefits, Plaintiff could be awarded benefits only if the ALJ determined that Plaintiff has a disability that began prior to Plaintiff's attaining age 22.  20 C.F.R. § 404.350(a)(5).  The ALJ found that Plaintiff had not attained age 22 as of November 16, 1994, the alleged onset date.  (R. at 17.)  The ALJ also found that Plaintiff last met the insured status requirements of the Social Security Act through September 30, 1997.  (*Id.*)  Therefore, the relevant period at issue is November 16, 1994, through September 30, 1997.

At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of November 16, 1994. (*Id.*)  At step two, the ALJ found that Plaintiff has the severe impairments of attention deficit hyperactivity disorder, dysthymia, learning disorder, and language disorder. (*Id.* at 18.) He further found at step three that, through the date last insured and prior to attaining age 22, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Specifically, the ALJ considered and rejected Listings 12.04 (depressive, bipolar and related disorders) 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). (*Id.*) The ALJ discussed each of the Paragraph B criteria, determining that Plaintiff had no limitation in understanding, remembering, or applying information; was moderately limited in interacting with others; was moderately limited in concentrating, persisting, or maintaining pace; and was moderately limited in adapting or

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

  1. Is the claimant engaged in substantial gainful activity?
  2. Does the claimant suffer from one or more severe impairments?
  3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
  4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
  5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

managing oneself. (*Id.* at 18–19.) The ALJ determined the Paragraph C criteria were not met. (*Id.* at 19.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")² as follows:

> [T]hrough the date last insured and prior to attaining age 22, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could perform simple, routine, repetitive tasks but not [at] a production rate pace. He was able to perform simple, work related decision[s]. He could have only occasional[ ] interact[ions] with supervisors and co-workers, but he could only have incidental, superficial interaction with the public.

(*Id.* at 19.)

At step five of the sequential process, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 22.) The ALJ further found, relying on the VE's testimony, that through the date last insured and prior to attaining age 22, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed, such as an automobile detailer, salvage laborer, or kitchen helper. (*Id.* at 23.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time prior to August 24, 1998, the date he attained age 22. Plaintiff was therefore not under a disability, as defined in the Social Security Act, at any time from November 16, 1994, the alleged onset date, through September 30, 1997, the date last insured. (*Id.* at 24.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

² A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

4

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff asserts two contentions of error: (1) the ALJ committed reversible error by failing to find that Plaintiff's mental health limitations met the criteria of Listings 12.04, 12.08, and 12.11; and (2) the ALJ committed reversible error by failing to account for Plaintiff's frequent physical altercations, which per the testimony of the VE would render Plaintiff

5

incapable of maintaining employment. (Pl.'s Statement of Errors 11–14, ECF No. 12.) The undersigned considers each contention of error in turn.

**A.     The ALJ's step-three finding that Plaintiff's impairments do not meet or equal the criteria of Listings 12.04, 12.08, and 12.11 is supported by substantial evidence.**

In determining whether a claimant is disabled, an ALJ must consider whether the claimant's impairments meet Social Security Listing requirements. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."). The claimant shoulders the burden of producing medical evidence that establishes that all of the elements are satisfied. It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Here, Plaintiff challenges the ALJ's finding that his impairments do not meet or equal the criteria of Listings 12.04 (depressive, bipolar and related disorders) 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). To meet any of these Listings, a claimant must satisfy the "Paragraph B" criteria, which appear in paragraph B of many Listings of Impairments involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b). To satisfy the Paragraph B criteria, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning:

6

>     (1)     understand, remember, or apply information;
>
>     (2)     interact with others;
>
>     (3)     concentrate, persist, or maintain pace; and
>
>     (4)     adapt or manage oneself.

*Id.* Here, the ALJ determined that Plaintiff had no limitation in understanding, remembering, or applying information; was moderately limited in interacting with others; was moderately limited in concentrating, persisting, or maintaining pace; and was moderately limited in adapting or managing oneself.  (R. 18–19.)  Plaintiff contends the ALJ erred by not finding that Plaintiff was extremely limited in interacting with others.  (Pl.'s Statement of Errors 11–12, ECF No. 12.)  The undersigned disagrees.

A claimant has an extreme limitation if "[he is] not able to function in this area independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(e).  This definition stands in contrast to the definitions of "moderate" or "marked" limitations, which refer to claimants whose ability to function is "fair" or "seriously limited," respectively.  *Id.*, § 12.00(F)(2)(c)–(d).  In other words, for Plaintiff's limitations in interacting with others to be deemed extreme, Plaintiff must demonstrate that he cannot independently, appropriately, or effectively, interact with others on a sustained basis *at all*.  Thus, so long as there is "relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that Plaintiff has at least some ability to interact with others, the ALJ would not have erred in determining that Plaintiff is not extremely limited in this area of mental functioning.  *See Rogers*, 486 F.3d at 241 (quoting *Cutlip*, 25 F.3d at 286).

In considering Plaintiff's limitations in interacting with others, the ALJ acknowledged that Plaintiff had a troubled childhood, but noted that Plaintiff was able to maintain at least some social relationships:

> In interacting with others, the claimant has a moderate limitation. Discussed in more detail below, the claimant has been in various schools that he testified were "severe behavior handicap schools." (Ex. B13F). These behavioral schools reported the claimant had a history of behavioral disturbances in school settings and being "out of control" with both his divorced parents. (Ex. B13F/35, 44, 62, 76, 85). The treatment providers have generally described the claimant as a "very difficult" resident. (Ex. B13F/87, 120). However, the claimant demonstrated an ability to form relationships with others. For example, the claimant testified he had a good relationship with his uncle, even though the claimant only saw his uncle a few times per year. He further testified he had a good relationship with his grandfather. The claimant also reported he had also gotten along fairly well with his older brother and younger half-sister. (Ex. B13F/124). Moreover, the claimant reported he formed a good relationship with a program coordinator and one of his teachers. (Ex. B13F/124).

(R. 18.) Thus, based on Plaintiff's own testimony and self-reports, he was able to maintain relationships with his uncle, grandfather, siblings, and at least one program coordinator and one teacher. Plaintiff does not dispute that he so testified and reported. This constitutes substantial evidence on which the ALJ could rely to conclude that Plaintiff was not fully incapable of interacting with others. *See*, *e.g.*, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (noting substantial evidence supporting ALJ's decision included claimant's testimony). There was therefore no error in the ALJ's conclusion that Plaintiff was not extremely limited in interacting with others. Although Plaintiff cites other record evidence that may have supported more serious limitations in the Paragraph B criteria, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Further, a finding that Plaintiff had an extreme limitation in interacting with others would not by itself warrant reversal. Extreme limitation in one of the Paragraph B areas is just one piece of the puzzle; Plaintiff has made no argument or showing that he met the remaining criteria of any Listing. *See*, *e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04A (requiring claimants to meet several criteria related specifically to depression or bipolar disorder). Without a showing that Plaintiff met *all* of the criteria of a particular Listing, even an erroneous finding that Plaintiff was not extremely limited in interacting with others would be harmless. *Sullivan v. Zebley*, 493 U.S. at 530.

**B.    The ALJ's residual functional capacity is supported by substantial evidence.**

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing

9

> basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

It should be noted that the record does not contain contemporaneous evidence from the relevant period of November 16, 1994 (the alleged disability onset date), through September 30, 1997 (the date last insured). Instead, Plaintiff relies heavily on records of his behavioral difficulties at residential schools from September 1992 through February 1994. (Pl.'s Statement of Errors 5–7, ECF No. 12.) These behavioral incidents included threats of violence against teachers, throwing chairs, shoving staff members and other residents, verbal hostility, stealing, and truancy. (*Id.*, citing R. 633–56.) Plaintiff further testified at the hearing that he held jobs at Wendy's and Burger King when he was "in between 18 or 19 [i.e., at some point during 1994–1995]," that he could not recall why his job at Wendy's ended, and that his job at Burger King ended after a month because he threatened his manager. (R. 39–40, 48.)

The ALJ discussed the evidence of record and determined that some social functioning limitations were appropriate, noting in Plaintiff's RFC that "he could perform simple, routine, repetitive tasks but not [at] a production rate pace. He was able to perform simple, work related decision[s]. He could have only occasional[ ] interact[ions] with supervisors and co-workers, but he could only have incidental, superficial interaction with the public." (R. 19.) But the ALJ concluded that Plaintiff was not precluded by his behavioral difficulties from working altogether:

> Despite the claimant's extensive behavioral problems during the period at issue,[3] the claimant demonstrated and reported abilities consistent with the above residual functional capacity during the period at issue. Most notably, the claimant demonstrated an ability to form relationships with others. For example, the

---

[3] It appears the ALJ mistakenly believed the records from Plaintiff's residential schools directly addressed the period at issue; as noted above, they did not.

> claimant testified he had a good relationship with his uncle, even though the claimant only saw his uncle a few times per year. Additionally, the claimant reportedly had a good relationship with a teacher and a program coordinator at Buckeye Boys Ranch that he found "quite helpful." (Ex. B13F/124). After he established these relationships, he did well in school and was more committed to his schoolwork. (Ex. B13F/124). The claimant also reported he had got along fairly well with his older brother and younger half-sister. (Ex. B13F/124). Furthermore, although the claimant had truancy problems, he managed to finish his ninth grade school year with good grades and graduate to the tenth grade. (Ex. 13F/76). Moreover, aside from behavioral problems, the claimant did not testify he experienced any memory problems and his memory was intact. (Ex. B13F/125).
>
> Considering the above, and consistent with the "paragraph B" criteria, the undersigned finds the claimant can perform work with the above mental limitations.

(R. 21–22.) The undersigned finds no error in the ALJ's assessment of Plaintiff's behavioral difficulties. He considered the record as a whole and concluded that Plaintiff's behavioral difficulties were not disabling and concluded the limitations in the RFC adequately accounted for Plaintiff's impairments in interacting with others.

Plaintiff contends that the ALJ should have determined that Plaintiff "was incapable of avoiding verbal and physical altercations with others, including authority figures." (Pl.'s Statement of Errors 14, ECF No. 12.) This finding would be significant, as the VE testified that a "hypothetical individual [who] got into frequent verbal and/or physical confrontation with coworkers and supervisors" would not be able to maintain employment. (R. 66.) However, to obtain reversal on this basis, Plaintiff would have to demonstrate that no "reasonable mind" could conclude that Plaintiff would be able to avoid verbal and physical confrontations with coworkers and supervisors. *Rogers*, 486 F.3d at 241 (quoting *Cutlip*, 25 F.3d at 286). This is a high bar that Plaintiff has not met, especially considering the dearth of evidence that directly addresses the period at issue. It is Plaintiff's burden to submit evidence establishing his disability for the relevant period, and because Plaintiff has failed to do so, the ALJ did not err in concluding that Plaintiff could avoid confrontations with coworkers and supervisors.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE